IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

RICKY J. SAMPSON )
)
　　　Plaintiff, )
)
　　　vs. )　　　CIVIL ACTION
)　　　FILE NO.
KASIM REED, in his official capacity as )
Mayor of the CITY OF ATLANTA; )
CAYENNE MAYES, individually; )
ROBERT C. GODWIN, individually; )
REGINALD PETTIS, individually; )
STALONE DAVIS, individually, )
LUCA AMARENA, individually. )
)
　　　Defendants. )
_____ )

## COMPLAINT

COMES NOW Plaintiff Ricky J. Sampson who brings this Complaint

seeking damages and declaratory relief against Defendant City of Atlanta and the

individual Defendants, pursuant to 42 U.S.C. § 1983, as well as relief under

Georgia law against the individual defendants. This action arises from the unlawful

search and seizure and public strip-search of the Plaintiff by the individual

Defendants, pursuant to a custom, policy and/or practice of the Atlanta Police Department ("APD").

## JURISDICTION

1.

This action arises under the authority vested in this Court by virtue of 42 U.S.C. §§ 1983, 1988; 28 U.S.C. § 1331, and 28 U.S.C. § 1343, the Fourth and Fourteenth Amendments of the United States Constitution, and supplemental jurisdiction pursuant to 28 U.S.C. §1367.  This Court is authorized to grant declaratory relief pursuant to 28 U.S.C.A. § 2201 and 28 U.S.C. § 2202.

## VENUE

2.

Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391.  The City of Atlanta, Georgia, ("Atlanta") is within this judicial district and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

PARTIES

3.

Plaintiff Ricky J. Sampson ("Sampson") is a resident of Georgia, and is over the age of eighteen years.

4.

Kasim Reed is sued in his official capacity as mayor of the City of Atlanta ("Defendant City of Atlanta"), a City chartered under the laws of the State of Georgia and subject to the jurisdiction and venue of this Court. The Atlanta Police Department ("APD") is a division of Defendant City of Atlanta.

5.

Defendant Cayenne Mayes ("Mayes") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint. He is sued in his individual capacity.

6.

Defendant Robert C. Godwin ("Godwin") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint. He is sued in his individual capacity.

7.

Defendant Officer Reginald Pettis was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

8.

Defendant Officer Stalone Davis was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

9.

Defendant Officer Luca Amarena was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations of this Complaint; he is sued in his individual capacity.

10.

Collectively, the individual defendant police officers named above shall, at times, be referred to below collectively, as indicated by the attentive fact and circumstances as the "Defendant Officers".

## ALLEGATIONS REGARDING MUNICIPAL LIABILITY OF DEFENDANT CITY OF ATLANTA

### Unconstitutional Policies, Customs, and Practices

Custom, Policy and/or Practice of Public Strip-Searches

11.

At all times relevant to the events described in this complaint the APD, and in particular its "Red Dog Unit," had a custom, policy and/or practice to perform strip searches and body cavity searches in public. Among other examples to be proven at trial are:

a.  The body cavity search of Ronald McNair performed by Defendant Davis in the field on December 9, 2008, during which Defendant Davis searched McNair's "anal cavity" according to his own statement in APD incident report #083441853;

b.  The body cavity search of Chaddrick Hood conducted in the field on February 19, 2010, during which the officer "conducted a search of Hood's rectal cavity" according to the statements in APD incident report #100501758;

c.    The search and touching of the genitals of Clarence Smith, a 23-year old man, in the dressing room of a department store on November 26, 2007, by APD officers Cayenne Mayes and Reginald Pettis;

d.    The strip search of Shawn Venegas conducted on a public street by Red Dog Officers Cayenne Mayes, Dion Meredith, and Travis Britt on June 30, 2010;

e.    The search and touching of the genitals of 17-year old Olajuwan Wilson in a convenience store by Red Dog Officers Jonathan B. Cornelius on September 28, 2010;

f.    The public strip search of Plaintiff Kacy Daniel, in front of a strip mall on Oak Street by Red Dog Officers Mayes, Pettis and Ortiz, on May 20, 2010;

g.    The public strip search of Jason Walker on the roadside by Red Dog Officers Davis, Jackson and Lanier, on September 30, 2009;

h.    The public strip search of Vance Perry by Red Dog Officers Blasini, Murphy, Amarena, Caldwell, on June 29, 2010; and,

I.    The public strip search of Trenton Boyd by Red Dog Officers Guevara, Perry, Chao and another APD officer, on March 20, 2010.

<u>Custom, Policy and/or Practice of Detention, Search & Seizure
Without Reasonable Articulable Suspicion or Probable Cause</u>

12.

At all times relevant to the events described in this complaint the Atlanta Police Department ("APD"), and in particular its "Red Dog Unit," had a policy, custom, and/or practice to stop, frisk, and search persons without reasonable suspicion or probable cause.  Among many other examples to be proven at trial are the following:

a.     The unlawful stop, search, and arrest of Kelvin Bryant on October 16, 2008, by City of Atlanta police officer Brandon Jackson, along with Red Dog officers James Menzoian, William Porter, and Jason Overbaugh, about which a federal judge found "that the officers did not have probable cause or even reasonable suspicion to stop [Bryant's] vehicle." (See United States v, Kelvin Bryant, 1:09-CR-018-JEC, U.S.D.C.-N.D.Ga);

b.     The unlawful stop and search of Shawn Venegas and Brian Kidd by Red Dog Officers on June 30, 2010 (for which the City of Atlanta eventually paid a settlement of $200,000.00);

c.  The unlawful search and seizure of dozens of persons not suspected of any criminal activity during the "Atlanta Eagle bar raid" in September, 2009 (for which the City of Atlanta eventually paid a settlement of $1,025,000.00);

d.  The unlawful search and seizure of persons not suspected of any criminal activity during the "Ruby's Sanabella Restaurant and Lounge raid" in May, 2010; and,

e.  The unlawful seizure of James Hereford on August 5, 2010 (for which the City of Atlanta eventually paid a settlement of $50,000.00).

<u>Unconstitutional Policies & Procedures</u>

13.

The searches and seizures of Plaintiff described herein were conducted pursuant to unconstitutional official policies of the Atlanta Police Department which authorize suspicion-less seizures, frisks, and searches, including Standard Operating Procedure 3065 (which authorizes and instructs officers to detain and frisk individuals without regard to reasonable articulable suspicion) and Standard Operating Procedure 3020 Section 4.3.1 (which authorizes officers to perform warrantless searches without probable cause).

Acquiescence & Deliberate Indifference to Unconstitutional Practices

14.

As described herein, the policy of conducting strip and/or body cavity searches in public was widespread and well-known within the APD and so widely tolerated that Atlanta Police Officers openly described these searches in their own publicly available incident reports. This policy was tolerated, condoned and acquiesced to by senior policy makers in APD, and this was a moving force behind the conduct described herein.

15.

As described herein, the policy of conducting unlawful searches and seizures without reasonable articulable suspicion or probable cause was widespread and well-known and widely accepted by APD. This policy was tolerated, condoned and acquiesced to by senior policy makers in APD, and this was a moving force behind the conduct described herein.

<u>Failure to Train and Discipline</u>

16.

Prior to the conduct described herein, the City of Atlanta was aware of pervasive violations of the Fourth Amendment by APD officers.  Among other incidents to be proven at trial are the following:

a.    The unlawful search of 1056 Dill Avenue by Sergeant Wilbert Stallings and other APD officers in October, 2005 (for which Sgt. Stallings was sentenced to 18 months in federal prison);

b.    The unlawful arrest of Deborah Schowalter in January, 2006 (for which the City of Atlanta eventually paid a settlement of $25,000.00);

c.    Various Fourth Amendment violations associated with the death of Kathryn Johnston in November, 2006 (for which the City of Atlanta eventually paid a settlement of $4,900,000.00);

d.    The unlawful stop and arrest of Kelvin Bryant on October 16, 2008, by Atlanta Police Officers Brandon Jackson, James Menzoian, William Porter, and Jason Overbaugh, about which a federal judge found "that the officers did not have probable cause or even

reasonable suspicion to stop [Bryant's] vehicle." (See United States v.

Kelvin Bryant, 1:09-CR-018-JEC, U.S.D.C.- N.D.Ga);

e.    The unlawful arrest of Minnie Carrie in March, 2009 (for which the

City of Atlanta eventually paid a settlement of $20,000);

f.    The unlawful search, seizure, and arrest of dozens of innocent bar

patrons during the Atlanta Eagle bar raid (the "Atlanta Eagle Raid")

on September 10-11, 2009 (for which the City of Atlanta eventually

paid a settlement of $1,025,000.00).

17.

The APD's lack of training regarding the requirements of the Fourth

Amendment, prior to the incidents complained of herein, is also demonstrated by

the following:

a.    On July 14, 2009, the Atlanta Citizen Review Board ("ACRB")

recommended that the Atlanta Police Department conduct training

regarding Fourth Amendment issues including "Terry stops."   The

Chief of Police rejected this recommendation.

b.    In connection with its investigation of the Atlanta Eagle Raid the

ACRB reviewed "records concerning the department's in-service

training for officers during 2008 and 2009.  There was no indication officers received training concerning constitutional law."

c.   The ACRB "Study of Supervisory Responsibility" regarding the Atlanta Eagle Raid also reported that:  "It became evident during the course of the investigation that many officers are unfamiliar with the constitutional requirements for conducting a search and/or seizure."

d.   Deposition testimony and other statements related to the Atlanta Eagle Raid by senior APD commanders including former Chief Richard Pennington, Deputy Chief Carlos Banda, and Major Debra Williams also evidence a pervasive lack of training regarding basic Fourth Amendment concepts such as the requirements of a lawful Terry stop; the requirements of a lawful frisk; and the definition of an arrest, among other subjects.  These statements reflect both the failure of the Atlanta Police Department to train these employees themselves, as well as the improper training provided by senior commanders to the subordinates who look to them for guidance.

18.

Despite knowledge of these pervasive Fourth Amendment violations the City of Atlanta acted with deliberate indifference to the rights of persons, such as Plaintiff, with whom the police would come into contact by failing to provide appropriate training, guidance and discipline to APD officers regarding the requirements of the Fourth Amendment.

19.

The Atlanta Police Department has also demonstrated a pervasive failure to discipline police officers for unreasonable searches and seizures under the Fourth Amendment, and other violations of law.  Among other examples to be proven at trial, although the Atlanta Citizen Review Board ("ACRB") has sustained complaints against dozens of police officers for unlawful conduct, the Atlanta Police Department has a pattern of not following the ACRB's recommendations to impose discipline.  Additional factual information about this pattern is available on the website of the ACRB at http://acrbgov.org, including, among other references, http://acrbgov.org/case-10-7-complaint-brian-kidd/.

20.

At all times relevant to this Complaint, the Defendant Officers, as police officers of the City of Atlanta, were acting under the direction and control of APD and were acting consistent with and pursuant to the official custom, policy and/or practice of the City of Atlanta.

21.

As a direct and proximate result of the acts of the City of Atlanta as set forth herein, the Plaintiff suffered physical injury, mental anguish and other general and special damages in connection with the deprivation of Plaintiff's constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and protected by 42 U.S.C. §1983 and is thereby entitled to a judgment against the City of Atlanta for those damages and injuries suffered.

## FACTUAL ALLEGATIONS OF PLAINTIFF

22.

Plaintiff incorporates the allegations set forth in paragraphs 1 through 21, as if fully set forth herein.

23.

On February 17, 2010, Mr. Sampson was sitting outside across the street from the West End Mall, which is located in the West End neighborhood of the City of Atlanta, Fulton County, Georgia.

24.

Upon information and belief, on February 17, 2010, this area of the City of Atlanta was being patrolled by "Red Dog" Defendant Officers, Cayenne Mayes, Robert Godwin,  Reginald Pettis, Luca Amarena and Stalone Davis during their tour of duty.

25.

At approximately, 4 to 5 o'clock p.m. that day, Mr. Sampson had just received a hair cut at "Celebrity Status" barber shop.  Mr. Sampson was waiting outside on a retaining wall for his girlfriend and friend to pick him up.  As Sampson saw the car arrive, he stood up and began walking towards the car to get in and go home.

26.

As he was walking towards his car, an Atlanta Police Department's (APD) patrol vehicle pulled up, and the Defendant Officers jumped out and ran towards him, in what APD officers had come to call a "thunder run."

27.

One officer, either Reginald Pettis or Stalone Davis or Luca Amarena, grabbed Mr. Sampson by the arm and awaited instructions from Defendant Mayes who was apparently in control of the group of officers. Sampson was escorted over to the APD vehicle, without being told why he was approached, stopped, assaulted and arrested any reasoning or justification for being detained.  Mr. Sampson complied with the Defendant Officer's orders, and Officer Reginald Pettis stated to Sampson, "you about to fuck up."

28.

Either Reginald Pettis or Stalone Davis or Luca Amarena conducted an initial search of Mr. Sampson by removing his license and money from his front right pocket and his work ID from his back pocket, placing them on the trunk of the police vehicle.  That same officer also patted Sampson down fully.

29.

The Defendant Officers did not explain to Sampson why they were searching him.

30.

These Defendants neither requested nor received consent to search Sampson.

31.

After the initial search which revealed no contraband or justification for further interaction with him, Sampson was standing with his back facing Officer Reginald Pettis.  At the direction of Defendant Mayes, either Reginald Pettis or Stalone Davis or Luca Amarena pulled Sampson's pants and boxer shorts down to his mid-thigh, exposing Sampson's genitals to public view. Several witnesses unconnected to the incident saw Sampson's exposed genitals during this search.

32.

While conducting this unauthorized and illegal search, Sampson's buttocks were spread.  The inspection of Sampson's buttocks went of for approximately 4-5 seconds.

33.

Sampson was then turned around by Officer Reginald Pettis or Stalone Davis or Luca Amarena who touched and "inspected" his genitals for another 4-5 seconds.

34.

Defendant Officers Godwin, Davis and the remaining officers were present at the scene and failed to take any action, let alone reasonable steps to protect Mr. Sampson from the unlawful conduct of Defendant Reginald Pettis, at the order of Defendant Mayes.

35.

While this illegal search was being conducted, Mr. Sampson continuously asked what he had done wrong.  He informed the Defendant Officers that he did not have any drugs, weapons, or contraband, and that he works for the City of Atlanta, informing them that his ID was on the trunk of the Defendant Officer's car.

36.

These Defendants did not find any drugs, weapons, or contraband of any kind on Sampson's person.

37.

Once Sampson told the Defendant Officers he was a City employee, one of the Defendant Officers stated, "you work for the city, oh, sorry about all this, just a mistake." The Defendant Officers went on to tell Sampson that he didn't need to be in the area, and that it was a "bad area," as though they were just chatting on the street corner.

38.

Defendant Mayes asked Mr. Sampson, "Do I know you boy?"  Defendant Mayes went on to tell Sampson that he thought he knew where he lived and that he knew the type of vehicle Sampson drove.

39.

After assaulting, arresting, and illegally searching Sampson, the Defendant Officers simply released Sampson and walked away, providing no explanation for their conduct.

40.

These Defendants submitted no report of the illegal detention and search or even indicated the stop in any of their paper work, including their daily activity reports, as was pattern and practice for Red Dog officers.

## PLAINTIFF'S FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure under the
### United States' Constitution

(Against Defendant Officers & City of Atlanta)

41.

Defendant Officers Mayes, Godwin, Pettis, Amarena & Davis had no fact based objective reason to suspect Sampson of any criminal activity when they stopped him and had neither reasonable articulable suspicion nor probable cause to search Sampson.

42.

The search of Sampson without a warrant, reasonable suspicion, or probable cause was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution.

43.

The Defendant Officers violated clearly established law; no reasonable officer could have believed that it was lawful to stop and search Sampson without a warrant, reasonable suspicion, or probable cause.

44.

At the time these Defendants frisked and searched Sampson they had no reason to believe that Sampson was either armed or dangerous.

45.

The frisk of Sampson was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution.

46.

These Defendants violated clearly established law; no reasonable officer could have believed that it was lawful to frisk Sampson without reasonable suspicion that he was armed and presently dangerous.

47.

These Defendants had no probable cause to believe that Sampson was involved in criminal activity or in possession of contraband.

48.

The search of Sampson was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution.

49.

These Defendants violated clearly established law; no reasonable officer could have believed that it was lawful to search Sampson without consent, a warrant, or probable cause.

50.

The public search of Sampson's genitals, and exposure of Sampson's genitals and buttocks to public view, was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution.

51.

These Defendants violated clearly established law; no reasonable officer could have believed that it was lawful to strip search Sampson in public and expose Sampson's genitals to public view.

52.

In all the foregoing, these Defendants acted with reckless, deliberate and callous indifference to the constitutionally protected rights of the Plaintiff.

53.

These Defendants combined and conspired to violate Sampson's rights as described above; therefore, the individual Defendants are jointly and severally liable for the entire damages cause to the Plaintiff.

54.

Defendant Officers are each liable to Plaintiff for their failure to take any action, let alone reasonable steps, to protect Plaintiff from the unlawful conduct of the other officers present.

55.

The facts and circumstances described in paragraphs 10 through 21 were the "moving force" behind the conduct of the Defendant Officers set forth above.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF

### False Imprisonment Under Georgia Law

### (Against Defendant Officers)

56.

By unlawfully detaining Sampson and depriving him of his personal liberty, these Defendants are guilty of false imprisonment, a tort for which an action for damages will lie under O.C.G.A. § 51-7-20.

57.

These Defendants combined and conspired to accomplish the unlawful objective of falsely imprisoning Sampson by unlawful means.

58.

The false imprisonment was the act of these several individual Defendants jointly, and the individual Defendants are jointly and severally liable for the entire damages pursuant to O.C.G.A. § 51-7-22.

59.

These Defendants, with malice and oppression and with the intent to humiliate and harm the Plaintiff, falsely imprisoned and/or combined and conspired to falsely imprison Sampson and did so under color of legal process.

## PLAINTIFF'S THIRD CLAIM FOR RELIEF

### Battery Under Georgia Law

### (Against Defendant' Officers)

60.

These Defendants intended to make harmful or insulting or provoking contact with Sampson.  Such acts constitute battery by these Defendants, under the laws of Georgia and are actionable under O.C.G.A. §51-1-14.

61.

These Defendants combined and conspired to accomplish the unlawful objective of committing a battery on Sampson by unlawful means.

62.

These Defendants, with malice and oppression and with the intent to humiliate and harm the Plaintiff, committed a battery on and/or combined and conspired to commit a battery on Sampson and did so under color of legal process.

## PLAINTIFF'S FOURTH CLAIM FOR RELIEF

### Punitive Damages

**(Against Defendant Officers)**

63.

The acts of Defendants Mayes, Godwin, Pettis, Amarena & Davis as set forth herein, were willful, wanton, malicious and so extreme and oppressive as to entitle Sampson to an award of punitive damages against these individual Defendants.

## PLAINTIFF'S FIFTH CLAIM FOR RELIEF

### Abuse in Being Arrested

(Against Defendant Officers)

64.

The acts of the Defendants Individual Officers constituted a breach of the Georgia Constitution which provides that:  "[N]or shall any person be abused in being arrested, while under arrest, or in prison."  *See* Ga. Const. art. I, § I, ¶ XVII.

## PLAINTIFF'S SIXTH CLAIM FOR RELIEF

### Bad-Faith Fees and Expenses – O.C.G.A. §13-6-11

(Against Defendant Officers)

65.

The acts of the Defendant Officers were committed in bad-faith and thereby give rise to Plaintiff's claim to bad-faith fees and expenses pursuant to Georgia Law.

## PLAINTIFF'S PRAYER FOR RELIEF

On the basis of the foregoing, Plaintiff respectfully prays that this Court:

a.      Assume jurisdiction over this action;

b.      Award Plaintiff actual damages, including compensation for physical pain and injury, mental anguish, and emotional distress;

c.      Award Plaintiff general damages in an amount to be determined by the jury;

d.      Award Plaintiff nominal damages for violations of Plaintiff's constitutional rights;

e.      Award Plaintiff punitive (exemplary) damages against the individual Defendants, to the extent permitted by law, and Award fees and expenses as authorized by O.C.G.A. 13-6-11;

f.      Declare that Defendant Officers Mayes, Godwin, Pettis, Amarena, Davis and the City of Atlanta violated Plaintiff's rights under the United States Constitution;

g.      Award Plaintiff's attorney's fees under 42 U.S.C. §1988 and any other applicable provision of law;

h.      Award Plaintiff damages against Defendant Officers Mayes, Godwin, Pettis, Amarena and Stalone Davis who violated Plaintiff's rights under the Georgia Constitution in abusing Plaintiff while being arrested.

i.      Award Plaintiff bad-faith fees and expenses against the Defendant Officers, pursuant to Georgia law.

j.      Award such other and further relief as the Court deems just and proper.

**A JURY TRIAL IS DEMANDED**

Respectfully submitted this 16th of February, 2012.

S/ G. BRIAN SPEARS
Bar No. 670112
Attorney for Plaintiff

1126 Ponce de Leon Ave., N.E.
Atlanta, Georgia 30306
Tele:  (404) 872-7086
Fax:   (404) 892-1128
Email: Bspears@mindspring.com

**CERTIFICATE OF COMPLIANCE WITH L.R. 5.1(B)**

Counsel for Plaintiffs certifies that the foregoing Brief complies with the

font and point size requirements of Local Rule 5.1(C).

S/ G. BRIAN SPEARS
Bar No. 670112
Attorney for Plaintiffs

1126 Ponce de Leon Ave., N.E.
Atlanta, Georgia 30306
Tele:  (404) 872-7086
Fax:   (404) 892-1128